# LEVINE & BLIT, PLLC
*Attorneys at Law*

EMPIRE STATE BUILDING
350 FIFTH AVENUE, 40TH FLOOR
NEW YORK, NEW YORK 10118
PHONE: (212) 967-3000 · FAX: (212) 967-3010
www.levineblit.com

October 25, 2018

**By ECF**

Hon. Andrew L. Carter, Jr.
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, NY 10007

        Re:    <u>*Dykstra v. DLP Media Group, LLC et. al,* (1:18-cv-08148-ALC)</u>

Dear Judge Carter:

      Plaintiff Lenny Dykstra ("Dykstra" or "Plaintiff") respectfully submits this response to Defendants DLP Media Company, LLC ("DLP"), Michael Hughes ("Hughes"), and Gregory C. Lake's (collectively "Defendants") request for a pre-motion conference in connection with its proposed motion for judgment on the pleadings.

## Statement of Facts

      Plaintiff, a former Major League Baseball player, and Defendants attempted to produce a documentary series based on Plaintiff's life. On April 21, 2017, Plaintiff and Defendants entered into an "Exclusivity-Hold/Development Agreement" ("Hold Agreement"). Compl. ¶ 20. This agreement provided for the development, pitching, and potential production of a documentary based on Plaintiff's life (the "Project"), and it was to be distributed via a third-party content distributer (the "Network"). *Id.* The Hold Agreement provides that "In the event Producer enters into an agreement with a Network, Producer and Dykstra agree to negotiate in good faith the terms and conditions, including compensation and credit, for Dykstra's services in the Project." Compl. ¶ 22, Ex. A. Through a series of email communications between April 2017 and August 2017, Plaintiff continually emailed Hughes and asked for updates about an agreement with a Network (Amazon). Compl. ¶¶ 25-36. On May 3, 2017, Plaintiff emailed Hughes, stating his frustration with Hughes and DLP, and indicated Plaintiff has little knowledge of this industry and continually asked for an update on and explanation of the Amazon deal. Compl. ¶ 27. Plaintiff also received confirmation that terms of an agreement were entered into. Compl. ¶¶ 35, 37, 41. Then, in August 2017, Plaintiff signed an "On Camera Participation Agreement" with DLP. Compl. ¶ 38. This Agreement contained a Compensation clause, which provided that Plaintiff was to be compensated $200,000. Compl. ¶ 39.

1

Not long after, in September-October 2017, Defendants told Plaintiff that Amazon decided not to proceed with the Project. Compl. ¶ 40. On October 12, 2017, Plaintiff emailed Hughes and asked to see the Amazon agreement. Compl. ¶ 41. But, Hughes responded that if Plaintiff signed an agreement, Defendants would forgive their out-of-pocket expenses and would show Plaintiff the "worthless" Amazon deal. *Id.* Specifically, Hughes stated "If you're willing to sign this agreement, we, again, will forgive the ~45K we are out-of-pocket, and would be happy to share the Amazon agreement…which unfortunately is worthless paper at this point, but nonetheless happy to show you that the deal was, in fact, real…" *Id.* Defendants then neglected to tell Plaintiff that Defendants received $400,000 in damages from Amazon. Compl. ¶ 42. Plaintiff, without this knowledge, signed a Release Agreement with Defendants. *Id.*

Then, on July 31, 2018, Plaintiff filed this current lawsuit for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud in the inducement, and negligent misrepresentation in the Supreme Court of the State of New York, County of New York. Defendants subsequently removed this action to this Court based on diversity jurisdiction, and filed an answer. Defendants are currently seeking a pre-motion conference. Plaintiff respectfully submits this response to Defendants' request for a pre-motion conference.

## **Argument**

First, Defendants contend that the Hold Agreement does not guarantee that Plaintiff was entitled to receive compensation or does not provide a potential calculation for the compensation. But, getting to this result should only be a "*last resort*" because "when the contracting parties manifested an intent to be bound at the time of agreement, the court may supply a compensation term. . . ." *Mar Oil, S.A. v. Morrissey*, 982 F.2d 830, 840 (2d Cir. 1993) (emphasis added). This Court could look to industry standard, for example, to supply a compensation term for the Hold Agreement. *See id.* The parties each manifested an intent to be bound by the Hold Agreement as Plaintiff had other offers, but signed the Hold Agreement with Defendants to produce the docuseries. Defendants intended to be bound by the Hold Agreement as Defendants contacted Amazon and even came to an agreement with Amazon.

Next, Defendants argue that Plaintiff cannot establish a special relationship for his negligent misrepresentation claim. However, for a negligent misrepresentation cause of action, a special relationship is present when there is privity of contract or a close relationship similar to that of privity. *J.P. Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 401 (S.D.N.Y. 2004). More specifically, courts in the Southern District have used the following three-part test to determine whether a special relationship exists: "[1] whether the person making the representation held or appeared to hold unique or special expertise; [2] whether a special relationship of trust or confidence existed between the parties; and [3] whether the speaker was aware of the use to which information would be put and supplied it for that purpose." *Wells Fargo Bank Nw. N.A. v. Taca Int'l Airlines*, 247 F. Supp. 2d 352, 366 (S.D.N.Y. 2002).

Here, Plaintiff can establish a special relationship, and thus establish negligent misrepresentation. First, Defendants, specifically Hughes, had special expertise in the matter because Hughes is an owner or member of DLP and has particular knowledge about this

industry. Compl. ¶ 3. Second, a relationship of trust or confidence existed between Plaintiff and Defendants because Plaintiff had two other offers, but turned them down to be able to continue working with Defendants. Compl. ¶ 19. Plaintiff's relationship with Defendants is beyond that of a typical arm's length transaction because emails between Plaintiff and Hughes became personal as Hughes once stated that "Wouldn't have advanced you money (as much as we love ya) against a deal that didn't exist." *See generally,* Compl. ¶ 77.

Third, Defendants told Plaintiff that the Amazon deal was "worthless paper" after they led Plaintiff on for about three months under the guise that Defendants had/were working on a deal with Amazon. Defendants were aware that their false representations not only led to their omission of a damages award from Amazon, but also made it appear that Plaintiff had to sign the Release Agreement to view the "worthless" Amazon deal. Thus, Plaintiff can establish a claim for negligent misrepresentation, thereby making Defendants' letter for a pre-motion conference inappropriate.

Lastly, Defendants claim that Plaintiff cannot establish the required "separate fraud" for his fraudulent inducement claim. A separate fraud is present when there are allegations that are "collateral or extraneous" to a release contract. *Solar Elec. Sys., Inc. v. Skanska USA Bldg., Inc.*, 2017 NY Slip Op 30962(U), at *6 (Sup. Ct. N.Y. Cty. 2017). Contrary to Defendants' argument, Plaintiff can establish a separate fraud because Defendants never disclosed to Plaintiff that it received a significant amount of money from Amazon. Additionally, because of Defendants conduct, Plaintiff missed the opportunity to negotiate a documentary series with other parties.

For all of the foregoing reasons, if Defendants were allowed to argue this motion, they would lose.

Respectfully Submitted,

LEVINE & BLIT, PLLC

Matthew J. Blit, Esq.